No. 2219.—BRUTUS J. CLAY, Administrator, v. LEROY C. MARTIN.

This is a seizure of the cotton made on the plantation for the payment of rent stipulated in the lease. The lessee insists that there was an overflow of the plantation during that year and that there was a verbal agreement of subsequent date to that of the lease that, in case of an overflow, the lessee was not to pay any rent. The plaintiff showed the lease and also a settlement at or near the end of the year of all matters between the parties, except the payment of rent, in which nothing was said about the lessee's not being required to pay rent in case of an overflow. The overflow was shown to be only partial and the crop not a total loss. On the other hand, it was shown by the testimony of the lessee, which was corroborated by two other witnesses, that, in case of an overflow, he was not to pay rent.

Held—That these facts preponderated in favor of the lessor, who was claiming under the written lease; that the settlement which was made and reduced to writing between the parties, which was corroborated by oral testimony, when taken in connection with the written lease, was stronger than the verbal agreement which the lessee contended was made that he was not to pay rent in case of an overflow.

APPEAL from the Fourth District Court, parish of Orleans. *Théard*, J. *John H. Kennard*, for plaintiff and appellee. *A. Robert*, curator *ad hoc*, for defendant and appellant.

TALIAFERRO, J. The plaintiff sues on a contract of lease entered into between C. J. Field (whose estate is administered by plaintiff) and the defendant and one Childress, by which Field leased a plantation in Bolivar county, Mississippi, to Martin and Childress for cultivation during the year 1867, for the consideration of $4000. The contract is a written one. The crop grown on the leased premises seems to have been a small one, in consequence of the high water of that year. It was shipped to New Orleans and sold by the house of Morrison, Buck & Co., in whose hands the plaintiff attached the proceeds, amounting to a little over $1200, claiming the lessor's privilege. A curator *ad hoc* was appointed to represent Martin, an absentee. The curator *ad hoc* answered, denying any indebtedness to the plaintiff,

and averred that after the execution of the written lease, Field, the lessor, by a contract between himself and Childress, took the place of Childress in the original agreement, and by this new arrangement the plantation was cultivated by Field and the defendant, Martin, who, in assenting to the second contract, stipulated with Field that the defendant should not be bound to pay any rent if an overflow of the plantation should occur. This agreement, alleged by the defendant to have been made, was not reduced to writing. The defense is, therefore, that an overflow of the plantation having occurred in 1867, the defendant was exonerated from paying rent. The defendant set up a reconventional demand for $4050 for cotton alleged to have belonged to the defendant and which Field received and sold and failed to account to him.

The plaintiff pleaded prescription against the reconventional demand.

Judgment was rendered in the court below rejecting the defendant's reconventional demand and awarding judgment in favor of the plaintiff for $2000, with six per cent. interest from first January, 1868, with privilege upon the proceeds of the cotton attached.

The defendant has appealed.

The testimony conflicts materially. Martin, for himself, swears that the condition in regard to overflow was stipulated between himself and Field. A witness in his behalf testifies that she heard Field say that Martin was to pay no rent if the land should be overflowed. This statement is also made by the lady's husband. But Martin's testimony, in his own behalf, we regard as greatly neutralized by the plaintiff's testimony. The latter shows that Martin signed a written instrument importing a settlement by him and the administrator of Field on the seventeenth January, 1868, which expresses the following: "We have this day settled the partnership between Leroy C. Martin, T. J. Childress and C. J. Field in cultivating the 'Content Plantation' for the year 1867, except the rent for the plantation and the amount due Coffee for supplies, for which each one agrees to pay one equal half." In connection with this instrument in evidence, Myers, a witness, says he was present at the settlement by request of the defendant. He states that Martin set up the claim for reduction of the rent on account of overflow, and also a claim for cotton, but that these claims were rejected by the plaintiff. He says that the old lease, the one in writing, was the basis of their settlement and constantly referred to. The witness Converse says: "The agreement to purchase Childress' interest by Field was verbal. I was present; made the calculations for Colonel Field. Nothing was said about overflow or worms. This settlement occupied two days. Martin was present the first day; at the time of the close of the settlement he was not present. He was privy and present at the time of the buying out of

the lease by Field; made no stipulations about overflow or worms; nothing was said on that subject at the time, that I heard." This witness says that at the settlement between the administrator and Martin the latter "claimed that he gave Colonel Field, during the war, permission to give up some seed cotton and bale it and sell it. Mr. Clay refused to allow the claim. The signing of the settlement B was after this conversation occurred." The statement of two witnesses before referred to, husband and wife, sustaining Martin's in regard to the condition respecting overflow, is contradicted by the testimony of Converse. This witness lived in the house with Field, and we infer was his physician. Field died on the eighteenth of July, 1867. This verbal agreement between Field and Martin, upon the former's taking the place of Childress under the written lease, occurred in May previous. Mrs. Buckner, one of the witnesses, says she heard Field, at her husband's residence, speak of the agreement not to exact rent if an overflow should occur. Her husband also names his house as the place where he heard this statement. Converse says that after the verbal agreement in relation to the new contract, Field was never at Buckner's, and he mentions facts with much circumstantiality upon which he bases this declaration and speaks in positive terms. Holloway, who was the agent of the administrator and who dealt with the parties in relation to the lease, says in the course of his testimony: "I know personally there is no dispute as to Martin's indebtedness. I know that Martin knows of this seizure. I have seen Martin since the seizure herein. He admitted his indebtedness and offered to compromise."

After a review of all the evidence we incline to think with the judge a quo that there is a preponderance in the evidence on the side of the plaintiff.

It appears that there was not a total loss of the crop on the "Content Plantation" in 1867. The witness, Holloway, says there were sixty-one bales raised.

In regard to the reconventional demand we think it too vague and indefinite to be admitted. No time is fixed when the cotton alleged to have been furnished by Martin to Field was received. It is said to have been "during the war." Martin himself says nothing about it in his own testimony. A witness states that in 1866 he heard Field say he owed and had to settle with defendant (Martin) for cotton received. This evidence, if admissible, is too indefinite to establish the claim asserted.

We do not think, as contended for by plaintiff, that he is entitled to a personal judgment.

It is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed, with costs.